United States Court of Appeals,

Fifth Circuit.

No. 94-20362.

CONTICOMMODITY SERVICES, INC. and Continental Grain Company, Plaintiffs-Counter-Defendants-Appellees,

v.

David J. RAGAN, et al., Defendants,

 David J. Ragan and Joe O. Ragan, Defendants-Counter-Plaintiffs-Appellants.

Sept. 12, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, EMILIO M. GARZA and STEWART, Circuit Judges.

STEWART, Circuit Judge:

As part of multidistrict litigation, ContiCommodity Services, Inc. and Continental Grain Company (together referred to herein as "Conti")[1] filed suit against David J. Ragan and Joe O. Ragan for damages arising from financial market trading activity attendant to the closing of Conti's Houston branch office. *ContiCommodity Services, Inc. v. Ragan,* No. H-84-4652 (S.D.Tex.); *In re ContiCommodity Services, Inc., Securities Litigation,* 733 F.Supp. 1555 (N.D.Ill.1990). The Ragans filed a counterclaim against Conti, asserting *inter alia* that these damages arose because Conti had breached its contract to finance their debit balances and had made defamatory statements about David Ragan. The district court granted in part Conti's motion for summary judgment against the

---

[1]ContiCommodity Services, Inc., was a fully owned subsidiary of Continental Grain Company.

Ragans, and the Ragans appeal.  We affirm.

FACTS

In 1981, Conti hired David Ragan to work in its Houston, Texas branch office.  He conducted arbitrage trading, ranging from less speculative hedged positions to more speculative cash trading, for his customers and for his own account.[2]  Conti routinely loaned money to Ragan's customers to finance trading activity, so that the customers had to deposit only a percentage of the transaction amount.  The value of the customer's securities or commodities "position" could be expressed simultaneously in several ways which include (1) the net[3] face value of the position;  (2) as the net market value of the position;  (3) as the net face or market value of the position, minus the amount financed and associated fees or interest cost.  By early 1984, the Houston branch office had

---

[2]"Arbitrage trading is the simultaneous purchase and sale of the same or equivalent securities or commodities in different markets or on different exchanges at different prices, in order to profit from the price differences between markets."  *In re ContiCommodity Services, Inc., Securities Litigation,* 733 F.Supp. at 1562.

[3]The securities or commodities could be (1) purchased in anticipation of an increase in market value and later sold;  (2) sold—or borrowed from elsewhere and sold (i.e., "sold short")—in anticipation of a decrease in market value and later purchased for return to the pre-sale owner of the security.  These various options could be done at the same time in different markets, or at different times but with the same security or commodity, as noted above in footnote 2.  "Net" value, as used in this sentence, refers to the net value of the purchases and the short sales.  In addition, the cash securities could be purchased and held until maturity, at which time the face value and interest due on the security could be used to repay any amount that was financed.

sustained losses and Conti decided to close it.[4] The instant facts arise from Conti's decision to close out the customers' accounts in conjunction with the closing of its Houston office.

Conti filed suit against David Ragan, alleging fraudulent and fictitious transactions. The Ragans filed a counterclaim against Conti. In this counterclaim, David Ragan alleged that Conti breached its contract with him, tortiously interfered with David Ragan's employment contract, reputation, and prospective customer relationships by making defamatory statements, and fraudulently concealed its decision to close the Houston office. Joe Ragan alleged that Conti breached its contractual and fiduciary obligations by closing out his positions and thereby keeping him from reducing or offsetting his losses.

Many of the claims of the numerous parties to this case and related cases in this multidistrict litigation were disposed of in Illinois before United States District Judge Hart and are documented in a written opinion. *See In re ContiCommodity Services, Inc., Securities Litigation.* Among Judge Hart's rulings were summary judgments entered on several of the Ragans' claims against Conti. Judge Hart transferred the remaining claims between Conti and the Ragans to the United States District Court for the Southern District of Texas where United States District Judge Black

---

[4]By the time it closed on May 24, 1984, Conti's Houston branch office had incurred more than $55 million in trading losses for the accounts of its arbitrage and speculative customers. The closing of the Houston office spawned numerous lawsuits in which approximately two million documents were filed.

rendered a final summary judgment against the Ragans on their remaining claims. The Ragans appeal this final summary judgment, as well as some of the judgments entered by Judge Hart. The parties agree that Texas law is applicable to these state law claims.

## DISCUSSION

The Ragans argue that the Texas district court erred in entering summary judgment because the evidence was sufficient to defeat the motion for summary judgment and because it reached issues that either were not appealed or had been decided by Judge Hart.

We review the district court's grant of summary judgment *de novo.* *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). Summary judgment is appropriate when the moving party shows that there is no genuine issue of material fact. *Id.* The moving party may make this showing by pointing out the lack of evidence to support the nonmoving party's case. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Once this showing is made, summary judgment is proper against the nonmoving party when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106

4

S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Duffy,* 44 F.3d at 313-14. In order to defeat a properly supported motion for summary judgment, the nonmoving party must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a "fair-minded jury" that it is entitled to a verdict in its favor. *International Shortstop, Inc.,* 939 F.2d at 1263; *Howell,* 897 F.2d at 192. At this point, the mere allegations in the complaint are not sufficient; the non-movant is required to identify specific evidence in the record, and to articulate the "precise manner" in which that evidence supported their claim. *Id.; Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

We shall address the summary judgment entered as to David Ragan and Joe Ragan, respectively.

*A. Summary Judgment Against David Ragan*[5]

Criminal charges were instituted against David Ragan for fraudulent and fictitious trade transactions in the form of eighteen counts of mail and wire fraud. A jury found him guilty on all eighteen counts. On July 16, 1993, while Ragan's conviction was on appeal to this court, Judge Black granted summary judgment in favor of Conti and against David Ragan because "David Ragan's criminal conviction eliminates any genuine issue of material fact regarding the issue of truth...."[6]

---

[5]References in this subsection to "Ragan" refer to David Ragan.

[6]Judge Black's "Final Judgment", filed April 14, 1994, referred to this July 16, 1993 order as the basis for final

Before transfer of this case to Texas, Judge Hart had dismissed Ragan's tortious interference with employment claims "to the extent claims are made based on any employment relationship other than the one with Merrill Lynch", and had dismissed Ragan's claims of tortious interference with customer and business relations because Ragan presented "no nonhearsay testimony showing that counterdefendants provided any false information to the customers." *In re ContiCommodity Services, Inc., Securities Litigation,* 733 F.Supp. at 1581. Judge Hart's reasoning was as follows:

> There is evidence from which it can be inferred that counterdefendants intended to induce David Ragan's firing. David Ragan has also presented evidence to support the claim that the information provided by counterdefendants caused David Ragan's dismissal from Merrill Lynch. David Ragan, however, has not presented specific facts showing counterdefendants caused the loss of any other employment.

In the "Final Judgment" at bar, Judge Black granted summary judgment against Ragan on all remaining claims. The basis expressed for this judgment was that (1) Ragan's criminal conviction settled the question of the truth of Conti's allegedly tortious and defamatory statements in Conti's favor; (2) therefore, there is no longer a genuine issue of material fact about the truth of these statements; and (3) therefore summary judgment is proper. There being no statutory or jurisprudential basis for the proposition that a criminal conviction satisfies the truth inquiry in a civil proceeding for defamation or tortious

---

judgment against David Ragan. Ragan challenges as error the use of his conviction as the basis for summary judgment against him.

6

interference by way of these statements, neither party argues on appeal that Judge Black entered summary judgment against David Ragan for the correct reasons.[7]

The district court's grant of summary judgment against David Ragan, on the basis of his conviction which was on appeal at the time of judgment, was improper. Nevertheless, summary judgment may be affirmed on grounds other than the basis of the district court's decision. *See Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 193 (5th Cir.1990); *see also, Matter of Lewisville Properties, Inc.,* 849 F.2d 946, 950 (5th Cir.1988) and cases cited therein. We shall therefore address *de novo* whether the judgment was proper despite its improper basis.

Accusations or comments about an employee by his employer, made to a person having an interest or duty in the matter to which the communication relates, have a qualified privilege. *Schauer v. Memorial Care Systems,* 856 S.W.2d 437, 449 (Tex.App.—Houston [1st Dist.] 1993) (citations omitted). This privilege protects such communications in the absence of actual malice.

In the defamation context, actual malice does not include ill will, spite or evil motive. *Hagler v. Proctor & Gamble Mfg. Co.,* 884 S.W.2d 771 (Tex.1994). "Actual malice" is a term of art which is defined as "the making of a statement with knowledge that it is

_____

[7]The conviction was reversed on appeal to this court because the record did not show a sufficient connection between David Ragan and the charged offenses. *United States v. Ragan,* 24 F.3d 657, 660 (5th Cir.1994).

7

false, or with reckless disregard [8] of whether it is true." *See Duffy,* 44 F.3d at 313, *quoting Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989). A finding of such malice requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Hagler, quoting Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989); *Duffy, Id.* Where the employee claims that the employer made such references and accusations about him to one with a common interest (such as the employee's new employer), and the employer has pled the affirmative defense of qualified privilege, Texas law places on the plaintiff the burden of proof at trial with respect to malice. *Duffy,* 44 F.3d at 313-14, *citing Dun & Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896, 898 (Tex.1970). Thus, in the instant case, it matters not whether such statements were true or whether the statements were made to Merrill Lynch *and* the Chicago Board of Trade: if there is no clear evidence of "actual malice", then summary judgment was proper on these claims. *See and compare, Duffy v. Leading Edge Products, Inc.,* 44 F.3d at 313-316.

The plaintiff employee must show that the defendant employer acted with malice in order to overcome the affirmative defense of qualified privilege. In its answer to Ragan's counterclaim, Conti pled the defense of qualified privilege. The strongest evidence of

---

[8]"Reckless disregard" is defined as a high degree of awareness of probable falsity which the plaintiff shows by presenting "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *See Duffy,* 44 F.3d at 313, *quoting Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989).

8

malice is that Conti made these statements prior to having any concrete or objective indication of any wrongdoing on Ragan's part. Ragan argues that Conti's admission that it had nothing to support the allegedly defamatory statements until after it made the statements means that Conti had actual malice. Conti argues that the information which was later found by outside auditors confirmed the suspicions which it had communicated in the challenged statements. Neither of these arguments is more probable than the other and, without weighing the evidence, we find that Ragan has not made a showing that is sufficient to constitute the "clear evidence" of malice required to defeat a properly supported motion for summary judgment. Thus, in the absence of such a showing, Conti was entitled to summary judgment against Ragan even if the statements at issue were false.

Ragan also argues that Judge Black erred in dismissing *all* of his claims because he did not appeal Judge Hart's decision to deny Conti's summary judgment motion as to the Merrill Lynch portion of his tortious interference claims or as to his defamation claims. Our review of Judge Black's grant of summary judgment is *de novo.* Judge Black did not articulate any basis for summary judgment other than Ragan's criminal conviction, and thus did not address Judge Hart's prior decision. The record before us shows that, as a matter of law, there is no genuine issue of material fact regarding Conti's qualified privilege defense. For this reason, we affirm the entry of summary judgment and do not address these arguments.

Ragan also argues that the loss of his trading license in

conjunction with Conti's alleged wrongful conduct effectively ended his career in securities and commodities. He challenges Judge Hart's disposition of that claim as well as his claim of tortious interference with his non-Merrill Lynch employment and customer relationships. He asserts that he has shown a reasonable likelihood that, if he had not lost his trading license due to Conti's accusations, he would enter into "business relations" with prospective clients or employers and that, therefore, Judge Hart's dismissal of his claim of interference with business relationships should be reversed. We disagree. As we state in *In re Burzynski*, 989 F.2d 733, 739 (5th Cir.1993),

> The requisite elements [for an action for tortious interference with prospective business relations] are: 1) a reasonable probability that the plaintiff would have gotten a contract, 2) malicious and intentional action by the defendant which aborted the prospective business relationship, and 3) actual harm to the plaintiff.

Conti has carried its initial burden to show the absence of evidence that it acted with malice. Thus, absent a showing by Ragan that Conti acted in a malicious and intentional manner, there is no genuine issue of material fact on this element of Ragan's claims of tortious interference. We have already determined that Ragan has failed to show malice as the term of art is used in the context of alleged defamatory statements made by an employer and thus has failed to make a showing sufficient to establish an element which is both essential to his case and on which he would bear the burden of proof at trial. Here, the malicious and intentional actions alleged by Ragan are the alleged damaging statements made by his employer. For this reason, we also conclude

10

that Ragan has not shown a genuine issue of fact as to the "malicious and intentional action" element in his tortious interference claims. Moreover, the record discloses potentially damaging statements made by Conti, but Ragan does not identify evidence that the statements were made to one who does *not* have a common interest.[9] Therefore, Ragan must show malice in order to overcome Conti's qualified privilege defense.

There being no genuine issue of material fact as to a critical element of David Ragan's claim of tortious interference, defamation, slander, & libel, summary judgment against him was proper.

David Ragan also challenges Judge Hart's entry of summary judgment against him on his claims of breach of contract. Conti correctly points out that the arguments Ragan asserts on appeal were not presented in the response to Conti's summary judgment motion that was before Judge Hart. For this reason, we will not revisit Judge Hart's decision on this issue.

*B. Summary Judgment Against Joe Ragan*[10]

Joe Ragan challenges Judge Black's dismissal of his claims for damages allegedly sustained by Conti's orders to close out the positions in his account. By the time that Judge Black granted final summary judgment against Ragan, the only question remaining

_____

[9]Both Merrill Lynch and the Chicago Board of Trade had an interest similar to that of Conti's interest as Ragan's employer. *See and compare, Duffy* and *Dun & Bradstreet, Inc.*

[10]References in this subsection to "Ragan" refer to Joe Ragan. Joe Ragan did not challenge the summary judgment entered by Judge Hart.

11

was whether there was a positive balance in Ragan's account at the time it was closed. Ragan had provided no indication that particular trades were challenged. *See In re ContiCommodity Services, Inc., Securities Litigation,* 733 F.2d at 1569-70. Accordingly, Judge Hart had determined that, unlike the conversion claim of other Conti customers which were based upon improper trades, Joe Ragan's conversion claim was that Conti converted the balances in his account and not that Conti improperly closed out their positions. *In re ContiCommodity Services, Inc., Securities Litigation, Id.*

Ragan now contends that his claim is one for damages due to loss of the *value* (at maturity) of the securities in his account and is not a claim for conversion. Ragan asks this court to accept as accurate for purposes of damages calculation the value that the securities would have at maturity, rather than the market value of the securities at or near the time they were sold by Conti.[11] He contends that it is Conti's seizure of the securities that gave rise to his damage claim, without regard to what Conti did with them after it took them from his account; on this basis, Ragan argues that his claim is not one of conversion. This argument is not persuasive.

---

[11]Ragan presented some evidence that his position in these securities finally would have become "positive" some four months after the allegedly improper acts of Conti. However, he cites and we have found no statutory or jurisprudential basis for a finding that, as a matter of law, four months is a "reasonable" time to form the basis for calculating his requested "but for Conti's liquidation" damages in the type of trading that was done in his account.

12

A review of Ragan's counter-claim and the arguments in support thereof which were made before Judge Hart show that Judge Hart's "conversion" characterization was accurate. The record shows no indication that Ragan tried to reinvest in the market or challenged the actions of Conti in closing out his account. Ragan argues that because Conti stopped financing his trades, Conti prevented him from reentering the market—yet he does not point to any summary judgment evidence that he demanded either reinstatement of his positions or some other action to remedy the situation. A failure to either reinvest or demand reinstatement of one's trading position amounts to a decision to get out of the market and not risk a further loss. *See and compare, Chipser v. Kohlmeyer & Co.,* 600 F.2d 1061, 1067-68 (5th Cir.1979). We find no statutory or jurisprudential basis to support Ragan's insistence that the value of Ragan's account is the face value of the securities in the account. Moreover, Ragan has not shown that he is entitled to relief based on this method or other methods of valuation. We affirm the district court judgment as to Joe Ragan.

CONCLUSION

As discussed above, appellants have not shown that there exists a genuine issue of material fact in this case. Accordingly, we AFFIRM Judge Black's judgment which dismissed the remaining claims of David Ragan and Joe Ragan against ContiCommodity Services, Inc. and Continental Grain Company.