W. EUGENE DAVIS, Circuit Judge:
Plaintiff Bauhaus USA, Inc. (“Bauhaus”), appeals from the district court’s dismissal of its declaratory judgment action to enforce the terms of an employee benefit plan against defendants Lillie Regina Holmes Copeland and her daughter Reshan Holmes. Bauhaus sought a declaratory judgment in the district court that it was entitled, under the terms of the plan, to funds resulting from a settlement between defendants and third-party tort-feasors. The defendants moved to dismiss the case, arguing that the Employee Retirement Income Security Act of 1974 (“ERISA”)[1] does not preempt Mississippi’s anti-assignment rule. The district court granted the defendants’ motion. Because we conclude that ERISA does not authorize Bauhaus’ declaratory judgment action, we do not reach the preemption question.
I.
On June 1, 1996, Jamés Davis crashed the vehicle he was driving into a car carrying seven year-old defendant Reshan Holmes, who suffered injuries. Holmes is the daughter, of defendant Lillie Regina Holmes Copeland. Copeland was an employee of Bauhaus, the sponsor and administrator of . an employee benefit plan (the “Plan”) that covered Copeland as a participant and Holmes as a beneficiary. Although the Plan did not cover injuries resulting from the acts of another, the Plan honored Copeland’s request for benefits and elected to advance payments for Holmes’ medical expenses in the amount of $46,229.45.
According to the Plan’s provisions, one condition of any advance payment of benefits is that the Covered Person reimburse the Plan out of any recovery against a third party. In relevant part, the Plan provides:
Medical care benefits are not payable to or for a person covered under this Plan when the injury or illness to the Covered Person occurs through the act, omission or alleged negligence of another person....
However, the Plan may elect to advance payment for Medical Care expenses incurred for an injury or illness in which a third party may be liable if the Covered Person agrees to the following:
The Covered Person- will reimburse the Plan out of the Covered Person’s recovery for all benefits paid by the Plan. The Plan will be reimbursed prior to the Covered Person receiving any monies recovered from a Third Party or their insurer as a result of judgment, settlement or otherwise....
The Covered Person further agrees that he will not release any third party or their insured without prior written approval from the Plan, and will take no action which prejudices the Plan’s subro-gation right.
The Plan defines “Covered Person” to include both employees and their minor children. The Plan is self-funded — that is, it does not purchase an insurance policy but is funded only by the sponsoring employer — here Bauhaus. The parties agree that the Plan is an employee welfare benefit plan governed by ERISA.
*441 Davis, the driver of the other vehicle, was an employee of James M. Newman, who did business as Newman Trucking and was insured by Canal Insurance Company. Copeland, on behalf of the minor, sued these parties (collectively, the “Tort-feasors”) in Mississippi state court, and they eventually negotiated a settlement of the claims, including medical expenses, in; return for $750,000.
For legal standing to represent Holmes-in litigation, Copeland sought and was granted appointment as Holmes’ legal guardian. In the context of that guardianship case, Copeland petitioned the Mississippi Chancery Court for authority to set-' tie Holmes’ claim against the Tortfeasors according to the proposed settlement, agreement. The settlement agreement re-. quired the Tortfeasors to pay into the Registry of the Lee County Chancery Court $78,161.47 of the settlement proceeds, an amount sufficient to cover all . hens against the proceeds. The agree- ■ ment further stated that ah parties with claims against that money would then be “served with process in the interpleader action.”
A separate interpleader action never developed. Rather, the Chancery Court ordered that the Plan be made a party to the guardianship case and required to show why the Tortfeasors should not be given a release. The Plan then gave notice of removal of the guardianship case to the Northern District of Mississippi. Holmes moved to remand, and the Plan consented; accordingly, the district court remanded the case to the state court in June 2000.
A week later, Bauhaus, as administrator of the Plan, sued Copeland, Holmes, and the Tortfeasors in the Northern District of Mississippi, seeking a declaratory judgment that “Bauhaus is entitled to and shall receive full reimbursement of $46,229.45 from the proceeds of the settlement ... upon approval by the Chancery Court of the settlement.” The crux of Bauhaus’ case was, and is, that ERISA preempts the Mississippi law that requires court approval of the assignment of a minor’s right to insurance proceeds.
A week after Bauhaus filed suit in federal court, the Chancery Court approved Copeland’s petition to settle Homes’ claims. The sum of $78,161.47 remains in the registry of that court, and the guardianship case is still pending.[2] The tort litigation, however, is closed. The Chancery Court’s order (1) released the Tort-feasors from all “claims, demands, liens [and] subrogation interests” arising out of the tort litigation, including Bauhaus’ claim; and (2) required dismissal of the tort litigation.
The Tortfeasors, Copeland, and Holmes moved the district court to dismiss the action. The Tortfeasors argued that the doctrines of res judicata and release barred Bauhaus from suing them again. Copeland and Holmes contended that dis- . missal was proper on three grounds: (1) absence of a federal question, because ERISA does not preempt Mississippi’s (anti-assignment rule; (2) lack of federal 'jurisdiction over the funds in question, because they are in the registry of the Mississippi court; and (3) consent to state jurisdiction, because Bauhaus had agreed to remand the guardianship case to state court.
: In March 2001, the district court granted the motions to dismiss because it found that ERISA did not preempt Mississippi’s anti-assignment rule, and therefore, that it *442 did not have jurisdiction to hear the case. Bauhaus then filed its notice of appeal. We granted the Tortfeasors’ unopposed motion to dismiss them from this case prior to oral argument. Bauhaus now appeals only the district court’s dismissal of its claims against Copeland and Holmes.
II.
We review de novo a district court’s grant of a motion to dismiss.[3] We must therefore take the complainant’s allegations as true, and may not dismiss a claim unless it appears certain that the plaintiff cannot prove any set of facts in support of its claim that would entitle it to relief.[4]
The parties urge this court to decide whether ERISA preempts Mississippi’s anti-assignment rule that requires court approval of any assignment of a minor’s interest in insurance proceeds.[5] Before we may reach the merits of the parties’ preemption arguments,- however, we must make certain that jurisdiction is proper in this case.[6] “Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.”[7]
ERISA grants the federal courts “exclusive jurisdiction of civil actions under this title brought by ... [a] fiduciary.”[8] The parties agree that the Plan is governed by ERISA and that Bauhaus, as administrator of the Plan, is a “fiduciary” under ERISA. The only question that this court must resolve to determine whether jurisdiction is proper, therefore, is whether ERISA authorizes Bauhaus’ suit.
*443 ERISA § 502(a)(3) authorizes a civil action “by a ... fiduciary (A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ... the terms of the plan.”[9] ERISA authorizes Bauhaus’ suit, and this court has jurisdiction then, only if Bauhaus’ declaratory judgment action is- an action “to enjoin any act or practice which Violates ... the terms of the plan” or “to obtain other appropriate equitable relief.” [10]
In Mertens v. Hewitt Associates,[11] the Supreme Court made clear that the term “equitable relief’ in § 502(a)(3) referred only to “those categories of relief that were typically available in equity.”[12] In its later, and quite recent, case of Great-West Life & Annuity Insurance Co. v. Knudson,[13] the Court considered a case with facts nearly identical to the instant case.[14] In Great-West, Janette Knudson, a beneficiary of an ERISA-governed employee welfare benefit plan, was injured in a car accident.[15] The employee benefit plan included a reimbursement' provision similar to the one at issue in the present case; the provision stated that the plan had “ ‘the right to recover from the [beneficiary] any payment for benefits’ paid by the Plan that the beneficiary is entitled to recover from a third party.”[16] In particular, the Plan had “ ‘a first lien upon any recovery, whether by settlement, judgment or otherwise,’ that the beneficiary receives from the third party, not to exceed ‘the amount of benefits paid [by the Plan] ... [or] the amount received by the [beneficiary] for such medical treatment....’”[17] According to this provision, the plan covered $411,157.11 of Janette’s medical expenses, of which all except $75,000 was paid by Great-West.[18]
Janette and her then-husband filed a state tort suit' against the Hyundai Motor Company (“Hyundai”), the' manufacturer of the car in which they were riding when they were injured, and other tortfeasors.[19] The parties negotiated a $650,000 settlement which allocated $256,745.30 to a Special Needs Trust to provide for Janette’s medical care; $373,426 to attorney’s' fees and costs; and $13,828.70 to satisfy Great-West’s claim under the plan’s reimbursement provision.[20] Before the'state court approved the settlement, however, Great-West filed a notice of removal in the federal district court, asserting ERISA claims and that it was a defendant in the state law action.[21] The district court denied Great-West’s notice and remanded the case to state court, where that court approved the settlement.[22] Accordingly, the tortfeasors paid the settlement money to the Special Needs Trust and gave the re *444 mainder to the Knudsons’ attorney, who tendered a check in the amount of $13,828.70 to Great-West.[23] Instead of cashing its check, however, Great-West filed suit in the federal district court seeking declaratory and injunctive relief under EKISA § 502(a)(3) to enforce the reimbursement provision of the plan and recover from the settlement proceeds .the $411,157.11 it had advanced to Janette:[24]
The Supreme Court held that ERISA did not authorize Great-West’s suit, and therefore, affirmed the dismissal of the action.[25] The Court found that Great West was not seeking “to enjoin any act or practice which violate[d] .... the terms of the plan” or “to obtain other appropriate equitable relief’ under § 502(a)(3).[26] Declining to construe Great-West’s complaint as seeking a remedy that was “typically available in equity” as Mertens requires, the Court reasoned that Great-West essentially sought “to impose personal liability on [the Knudsons] for a contractual obligation to pay money-relief that was not typically available in equity.”[27]
The Court refused to accept Great-West’s argument that the relief it sought met the Mertens standard.[28] First, the Court rejected GreabWest’s contention that Great-West sought an injunction or specific performance to compel the Knud-sons to repay the contested funds. The Court reasoned that “an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity.”[29]
The Court also held that the relief that Great-West sought did not constitute-restitution in equity.[30] Distinguishing restitution in equity from restitution at law, the Court defined restitution in equity as a “form of constructive trust or equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant’s possession.”[31] The Court reasoned that Great-West did not seek restitution in equity because the proceeds of the settlement to which Great-West maintained it was entitled were not in the Knudsons’ possession, but were in the Special Needs Trust.[32] The Court explained that “[t]he basis for petitioners’ claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred.” [33]
Finally, the Court rejected the contention that the common law of trusts encompassed the relief sought by Great-West.[34] The Court found that the trust remedies *445 were “simply inapposite” to the relief sought by Great-West.[35]
We conclude that the facts of the instant case are indistinguishable in principle from Greatr-West. Both cases involve ERISA-governed employee benefit plans that include reimbursement provisions allowing the plans to recover from any settlement proceeds any amount the plans advanced for medical expenses resulting from third party wrong-doing. Third-party tortfea-sors injured the plan beneficiaries in both cases, and the plans advanced funds to the beneficiaries for medical expenses. In both cases, the plan beneficiaries made tort settlements with third-party tortfea-sors following suit in state court. In both, the plan administrator or assignee filed suit in the federal district court seeking declaratory relief that it was entitled to repayment of the benefits it had conferred. In the instant case, the settlement proceeds are in the registry of the Mississippi Chancery Court. In Great-West, the proceeds of the settlement were placed in a private Special Needs Trust outside the possession and control of the plan beneficiary. Nevertheless, the defendants in this case, like the Knudsons in Greatr-West, are not in possession of the disputed funds, a fact that Justice Scalia found extremely important in Greatr-West.
The Court in Greatr-West characterized the suit in that case as “[a] claim for money due and owing under a contract” and that such a suit is “quintessentially an action at law.”[36] Because the facts in today’s case are, in principle, indistinguishable from those in Greatr-West, we are bound by that decision and hold that § 502(a)(3) does not authorize Bauhaus’ suit.
III.
For reasons stated above, we affirm the district court’s dismissal of this suit for lack of federal jurisdiction because ERISA does not authorize this suit. Consequently, we do not reach the parties’ preemption arguments.
AFFIRMED.

. 29 U.S.C. § 1001 etseq. (2002).

. At oral argument, the parties agreed that the Chancery Court is collegially awaiting our ruling.

. Carney v. Resolution Trust Corp., 19 F.3d 950, 954 (5th Cir.1994) (citing Benton v. United States, 960 F.2d 19, 21 (5th Cir.1992)).

. Id.

. The Mississippi Supreme Court articulated this rule in McCoy v. Preferred Risk Ins. Co., 471 So.2d 396, 397-99 (Miss.1985) and Methodist Hospitals v. Marsh, 518 So.2d 1227, 1228 (Miss.1988).

. There is no independent ground for federal question jurisdiction under § 1331 based on plaintiff's preemption argument because plaintiff's suit cannot "arise under” ERISA for purposes of § 1331 if ERISA does not authorize the suit. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In Franchise Tax Board and Taylor, the Supreme Court held that "ERISA preemption, without more, does not convert a state claim into an action arising under federal law.” Taylor, 481 U.S. at 64, 107 S.Ct. 1542 (citing Franchise Tax Board, 463 U.S. at 25-27, 103 S.Ct. 2841). A claim that ERISA preempts a state law cannot create federal question jurisdiction where the federal issue is not part of the plaintiff’s well-pleaded complaint but could only arise as a defense, unless Congress created a cause of action in the allegedly preemptive statute. See Franchise Tax Board, 463 U.S. at 25-27, 103 S.Ct. 2841; Taylor, 481 U.S. at 64-66, 107 S.Ct. 1542; see also Erwin Chemerinsky, Federal Jurisdiction § 5.2, at 265-67 (2d ed.1994). In Taylor, 481 U.S. at 64-66, 107 S.Ct. 1542, the Court held that federal jurisdiction existed where ERISA preemption arose as a defense because § 502(a)(1) expressly created a cause of action available to the plaintiff. The Court reasoned that the federal courts had jurisdiction in that case because "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court.” Id. at 66, 107 S.Ct. 1542. Therefore, because we conclude, as discussed later in this opinion, that § 502(a)(3) does not authorize Bauhaus’ suit, the preemption claim cannot form the basis of federal question jurisdiction.

. Arizonans for Official English v. Arizona, 520 U.S. 43, 73, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (internal citation omitted).

. 29U.S.C. § 1132(e)(1) (1994).

. 29U.S.C. § 1132(a)(3).

. § 502(a)(3).

. 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

. Id. at 256, 113 S.Ct. 2063 (emphasis in original).

. 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

. Id.

. Mat 711.

. • Id. (citing the plan at App. 58).

. Id. (citing the plan at App. 58-59).

. Id.

. Id.

. Id.

. Id.

. Id.

. Id.

. Id. at 712.

. Id. at 718-19.

. Id.

. Id. at 712-13.

. Id. at 712-19.

. Id. at 713.

. Id. at 714.

. Id. (emphasis added). In contrast, the Court defined "restitution at law” as a remedy available to a plaintiff who "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.” Id. (internal citation omitted) (emphasis in original).

. Id. at 715.

. Id.

. Id. at 717.

. Id.

. Id. at 713 (internal citation omitted).