Mary **REYNOLDS**

v.

**SOUTH CENTRAL REGIONAL LABORERS HEALTH AND WELFARE FUND**

No. CIV.A. 03–0628.

United States District Court, W.D. Louisiana, Lake Charles Division.

March 1, 2004.

David A. Fraser, Pamela Lebeto Courtney, Lake Charles, LA, for Plaintiff.

John Galding Swift, Brent Nicolas Carriere, R. Jan Jennings, Lafayette, LA, for Defendant.

## MEMORANDUM RULING

WILSON, United States Magistrate Judge.

Before the court are cross-motions for summary judgment [doc. # s 25 & 28].[1]

### Background

On, or about June 18, 1999, Mary Reynolds tripped and fell over a vacuum cleaner electrical cord at the Delta Downs racetrack. As a result of the fall, Reynolds broke her wrist and injured both of her knees. (Reynolds Affidavit; Pl. Exh. 5). She underwent two surgeries to repair her left knee, and has received a recommendation that both knees be replaced. *Id.* Reynolds filed suit against Delta Downs and its insurers to recover damages that she sustained from the fall. On February 5, 2003, Reynolds settled her case against Delta Downs for the total sum of $75,000.00. (*See,* Receipt and Release of all Claims; Pl. Exh. 3).

During the relevant period, Reynolds was a participant in the South Central Regional Laborers Health and Welfare Fund ("the Plan"). (Brassell Affidavit; Def. Exh. 1). As a result of the 1999 accident, the Plan paid medical benefits totaling $ 31,270.53. *Id.* However, the Plan contains provisions which require reimbursement for all medical and other benefits expended on behalf of a participant to the extent the participant recovered, or had a legal right to recover damages from a third-party responsible for the damages. (Plan, pg. 53; Def. Exh. 3).[2] Pursuant to the Plan provisions. Reynolds also signed a Subrogation, Reimbursement and Assignment Agreement which

---

1. The case has been referred to the undersigned for the conduct of all further proceedings and the entry of judgment. 28 U.S.C. § 636(c).

2. The Plan provides in pertinent part:
   Covered Persons shall do nothing that will prejudice the Fund's right of recovery, and common law doctrines such as "make whole" and "common fund" or other similar doctrines will not be applied to reduce the Fund's right of recovery. The Covered Person is expected to take whatever steps are reasonable and necessary to obtain a recovery from persons who and/or insurance companies which may be liable for the payment of medical expenses that the Fund has already paid or will pay. Such steps include the timely filing of a claim with the appropriate insurance company. The Covered Person shall keep the Fund administrator informed of any action taken, the progress of settlement negotiations, and of any recovery obtained.
   
   ❋ ❋ ❋ ❋ ❋ ❋
   
   If a recovery is obtained either through settlement or as the result of judicial proceedings, the Fund is to be fully reimbursed for all payments made on behalf of the Covered Person as well as for those medical expenses that are reasonably foreseeable and which should be taken into account when settling the case.
   Most important: The Trustees do not authorize deductions for attorney fees; therefore, if the Covered Person retains an attorney to pursue a claim in connection with his or her injuries, it is the Covered Person's obligation to provide the attorney with a copy of the Reimbursement Agreement and to inform him/her that attorney fees may be taken only from the amount of money recovered *in excess* of the amount to which the Fund is entitled. Any agreement between the Covered Person and an attorney that reduces the amount recoverable by the Fund will be considered as a violation of the terms of the Plan and of the Reimbursement Agreement.
   *Id.*

confirmed the Plan's rights. (*See*, Def. Exh. 2).

After payment of the $ 75,000 settlement by Delta Downs, the funds were divided up. Mary Reynolds received a share of the settlement fund, some went to her attorney, and a portion was used to pay litigation costs. (Reynolds Affidavit; Pl. Exh. 5).[3] Of the $ 31,270.53 that was attributable to the benefits paid by the Plan, Reynolds's attorney retained one-third as attorney's fees, plus $ 637.08 as the *pro rata* share of court costs and expenses. (Pl.Exh. 4). The remaining $ 20,209.94 was deposited in the registry of the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana. (Pl. Exhs. 4 & 5).[4] In conjunction with the deposit, Reynolds filed the instant Petition for Declaratory Action against the Plan seeking a declaration that she is entitled to ownership of the funds placed in the court registry, free and clear of any claim by the Plan. (*See*, Petition).

On April 3, 2003, the Plan removed the case to federal court on the basis of federal question jurisdiction, pursuant to the Employee Retirement Income Security Act ("ERISA"). 28 U.S.C. § 1331, 29 U.S.C. § 1001, *et seq.*, (Notice of Removal, ¶ 2). On October 3, 2003, the Plan filed a counter-claim against Reynolds seeking recovery of the entire $ 31,270.53 in expended medical benefits, together with legal interest and attorney's fees. (Counter-claim). On October 9, 2003, the Plan filed a motion for summary judgment in support of its position. On October 22, 2003, plaintiff filed her own motion for summary judgment seeking title to the funds in the court registry and dismissal of the Plan's coun-

ter-claim. All sides agree that there are no genuine issues of material fact. (*See*, respective motions for summary judgment). After delay for briefing, the matter is now before the court.

### Summary Judgment Principles

Summary judgment is proper if the mover demonstrates that "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790 (5th Cir.1992). "In order to defeat a properly supported motion for summary judgment, the nonmoving party must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a 'fair-minded jury'[5] that it is entitled to a verdict in its favor." *ContiCommodity Services, Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir.1995)(citing, *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir.1991)).

In response to a properly supported motion for summary judgment, the non-mover may not rest upon the mere allegations or denials contained in her pleadings, but instead must set forth, by affidavit or otherwise, the specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). In other words, once the moving party points to an absence of evidence in the nonmoving party's case, the non-mover must come forward with summary judgment evidence sufficient, such that if introduced at trial, it would suffice to prevent a directed verdict against the

---

**3.** Reynolds spent all of the settlement money that she received. *Id.*

**4.** During a 1/6/04 telephone conference counsel for Reynolds confirmed that he no longer has any interest in the funds deposited, and

conceded that it was not necessary that he or his firm be made a party to the matter.

**5.** Albeit, in this case which is to be tried as a bench trial, the fact-finder is the undersigned.

non-mover. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995).

## Discussion

■ Before proceeding, we pause to recognize that this court enjoys subject matter jurisdiction to decide this matter. *See, Arana v. Ochsner Health Plan,* 338 F.3d 433 (5th Cir.2003)(*en banc*).[6] The parties agree that the subject plan is a welfare benefit plan governed by ERISA. (September 24, 2003, Trial Fixing). The parties further agree that ERISA supercedes or preempts all state laws that relate to the Plan. (Petition, ¶ 11; Def. MSJ, pg. 5).[7]

■ It is clear that as plan administrator, the Plan is a "fiduciary" under ERISA. (Def. Exh. 3, pg. 63; *Bauhaus USA, Inc. v. Copeland,* 292 F.3d 439, 442 (5th Cir.2002)). Federal courts have exclusive jurisdiction of civil actions brought by fiduciaries under ERISA. *Id.* Moreover, ERISA only authorizes actions by fiduciaries "to enjoin any act or practice which violates ... the terms of the plan" or "to obtain other appropriate equitable relief." *Id.* (quoting, 29 U.S.C. § 1132(a)(3)).

In *Great–West Life & Annuity Ins. Co. v. Knudson,* the Supreme Court found that a plan fiduciary seeking to enforce plan reimbursement provisions and recovery of settlement proceeds that had been placed in a special needs trust, was not seeking to "to enjoin any act or practice which violate[d] ... the terms of the plan" or "to obtain other appropriate equitable relief" authorized under ERISA. *Great–West Life & Annuity Ins. Co. v. Knudson* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). The Court reaffirmed its holding in *Mertens v. Hewitt Associates,* that "equitable relief" under § 1132(a)(3) refers only to "those categories of relief that were typically available in equity ..." *Id.* (quoting, *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993))(emphasis in original). Moreover, "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.*

The Court also distinguished restitution at law, from restitution in equity. *Great–West, supra.* Restitution in equity was available as a "form of constructive trust or equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* In these circumstances, a

"court of equity could then order a defendant to transfer title ... to a plaintiff who was, in the eyes of equity, the true owner. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff

---

**6.** The instant declaratory plaintiff alleges that the Plan's legal remedies are preempted by ERISA. (Petition, ¶ 11).

**7.** Moreover, the Plan has not advanced any right to recovery under state law. Indeed, the Fifth Circuit has consistently held that state law remedies are preempted by ERISA. *See, Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1290–1291 (5th Cir. 1988)(claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract and fraud preempted); *Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts,* 954 F.2d 299, 301 –302 (5th Cir.1992)(recognizing that ERISA preempts state law in employee benefit plan regulation); *Sunbeam–Oster Co., Inc. Group Benefits Plan for Salaried and Non–Bargaining Hourly Employees v. Whitehurst,* 102 F.3d 1368 (5th Cir.1996)(recognizing that state subrogation doctrines are preempted under ERISA).

particular funds or property in the defendant's possession."

*Id.*

Because the settlement proceeds sought by the plan fiduciary were in a special needs trust and not in the plan participant's possession, the Court concluded that the fiduciary was seeking personal liability, and not equitable relief. Accordingly, the Court held that the suit was not authorized under ERISA. *Id.*

Recently, in *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, Et Al.,* the Fifth Circuit permitted an ERISA plan to recover settlement proceeds that had been placed by the plan participant's law firm in its trust account. *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, Et Al.,* 354 F.3d 348, (5th Cir.2003)(*"Bombardier"*). The *Bombardier* plan filed suit against the law firm before the settlement funds were disbursed. *Id.* Because the Plan was seeking "to recover specifically identifiable funds that are in the constructive possession and the legal control of the participant but belong in good conscience to the Plan, its action for constructive trust in no way" sought to impose personal liability. *Id.* Thus, the court held that the action sought relief that was typically available in equity.

In the case *sub judice* the Plan seeks, in part, to recover specifically identifiable funds—the funds in the registry of this court. These funds are subject to an unambiguous reimbursement provision, and thus belong in "good conscience" to the Fund. *Bombardier, supra;* Def. Exh. 3. Clearly, the Plan could initiate an action against either Ms. Reynolds or her attorneys and recover the funds in their possession. *Bombardier, supra.* The issue here

is whether, by depositing the funds in the registry of the court in this action, the nature of the remedy sought has changed from equitable to legal. Declining the invitation to allow form to govern over substance, this court concludes that the relief sought by the plan is typically equitable in nature to the extent the Plan seeks to recover the funds deposited in the registry of the court in this action.

Reynolds contends that the outcome of this case is dictated by *Bauhaus USA, Inc. v. Copeland, supra.* In *Bauhaus,* the Fifth Circuit was confronted with a similar situation as was present in *Great–West, supra.* The principal distinction was that in *Bauhaus,* the funds from the settlement of the plan participant's state tort action were placed in the registry of the state court by the tortfeasors. *Id.* The plan filed a separate action in federal court against the plan participants and the tortfeasors seeking a declaratory judgment that "Bauhaus is entitled to and shall receive full reimbursement... from the proceeds of the settlement." *Id.* Relying on *Great–West,* the *Bauhaus* Court held that because the settlement funds were in the registry of the state court and not in the plan participant's *possession,* the plan fiduciary was not authorized under ERISA to recoup the paid benefits. *Id.*[8]

Despite a superficial similarity, we find that *Bauhaus* is properly distinguished. Most significantly, in *Bauhaus,* the funds were not in the registry of the court deciding the case. *Bauhaus, supra.* Instead, the funds were placed in the registry of the state court in contemplation of an interpleader action that never developed. *Id.* The case in federal court (*Bauhaus*) was an entirely separate action. *Id.* Thus, the court in *Bauhaus* did not have control

---

**8.** In *Bauhaus,* a subrogation right enjoyed by the plan administrator was immaterial. *See,*

*Bauhaus,* 292 F.3d at 451–452 (dissent).

over the identifiable funds. *Id.* The relief that the court could grant was limited to a money judgment which relief was not equitable in nature. Here, Reynolds, through her attorney, deposited the funds in this action prior to removal so that a decision could be made as to these specific funds.[9]

Whether restitution is equitable or legal "depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Great–West*, 122 S.Ct. at 714. The essential difference between restitution at law and restitution in equity is that restitution at law leads to a simple money judgment whereas restitution in equity involves the transfer of identifiable money or property. *Great–West*, 122 S.Ct. at 714–715; 1 Dobbs § 2.6(3) at 157; § 4.3(2); Palmer, Law of Restitution § 1.1, p. 3; § 1.3 p. 13; § 3.7 p. 262 (1978); Restatement of Restitution § 160, Comment a, pp. 641–42. Possession is not an essential element of an action for equitable restitution. *See* Restatement of Restitution § 160, Comment j. However, the court must be in a position to issue an *in personam* order that requires the defendant to transfer legal rights to specific property. 1 Dobbs § 4.3(2) at 590–91. In *Great–West* and *Bauhaus* the defendants had neither possession, nor title to the funds at issue. Accordingly, the court in each case was not in a position to order the transfer of the specific funds, but was limited to granting a money judgment. The deposit of the funds in the registry of the court in this action changed neither the basis of the plan's claim nor the nature of the underlying remedies sought. Because the funds are in the registry of this court, this court is in the position to grant equitable relief as to those funds that, in good conscience, belong to petitioners.

Turning to the terms of the instant Plan, we find that the Plan unequivocally provides for the right to recover all payments made on behalf of Reynolds.[10] (Plan, pg. 53; Def. Exh. 3); *see also, Sunbeam–Oster Company, Inc. v. Whitehurst,* 102 F.3d 1368 (5th Cir.1996). It is undisputed that these payments total $ 31,270.53. (*See,* statements of uncontested material facts). However, only the $20,209.94 in this court's registry is subject to equitable relief. The Plan's recovery is limited to this reduced sum. To the extent the Plan argues that plaintiff's attorney is holding the remaining amount, there is no competent summary judgment to support this allegation.[11] Even if such evidence existed, the Plan has not joined plaintiff's counsel as a party to the case. *See,*

**9.** It is also noted that in *Bauhaus,* the settlement funds were placed directly in the court registry by the tortfeasors without first being paid to the participant or her attorney. *Bauhaus, supra.* Here the funds were in the possession of Reynolds' attorneys, and thus, in the constructive possession of Reynolds. *See, Bombardier, supra.*

**10.** The instant Plan emphasizes that the Plan's reimbursement right is not subject to deductions for attorney fees incurred by the participant in her third-party claim. *See, Walker v. Wal–Mart Stores, Inc.,* 159 F.3d 938 (5th Cir.1998). Reynolds contends that the Plan's reimbursement right is subject to reduction pursuant to the common law "make whole" or "common funds" doctrine. However, the make-whole principle is a rule of interpretation that exists only when the parties are otherwise silent. *Barnes v. Independent Auto. Dealers Ass'n of California Health and Welfare Benefit Plan,* 64 F.3d 1389, 1394 (9th Cir.1995). In the instant case, the Plan expressly provides that the make whole and common funds doctrines shall not apply to reduce the Plan's reimbursement right. (Plan, pg. 53; Def. Exh. 3).

**11.** "Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir.1994)(quoting, *Larry v. White,* 929 F.2d 206, 211 n. 12 (5th Cir.1991)).

*Great–West,* 122 S.Ct. at 718 (the Court declined to consider whether equitable relief was available against participant's attorney because he/she had not been joined as defendant); *compare, Bombardier, supra.*[12]

For the foregoing reasons, we find that there is no genuine issue as to any material fact and that the South Central Regional Laborers Health and Welfare Fund is entitled to judgment as a matter of law, dismissing with prejudice plaintiff's petition, and declaring that the Plan enjoys a valid right to the funds in the court registry. Fed.R.Civ.P. 56. We further find that there is no genuine issue as to any material fact and that Mary Reynolds is entitled to judgment as a matter of law, dismissing defendant's counter-claim for any sum greater than the amount of funds in the registry of the court[13].

Accordingly, Mary Reynold's motion for summary judgment [doc. # 28] is hereby GRANTED-in-part. South Central Regional Laborers Health and Welfare

Fund's motion for summary judgment [doc. # 25] is likewise GRANTED-in-part.[14] The parties' request for attorney's fees is DENIED.[15] Each side is to bear their own costs.

## JUDGMENT

This matter having been submitted to the Court on cross motions for summary judgment and the Court after having considered same, along with the evidence presented, and having rendered its memorandum ruling of January 22, 2004,

IT IS ORDERED, ADJUDGED, and DECREED that there be judgment in favor of SOUTH CENTRAL REGIONAL LABORERS HEALTH AND WELFARE FUND granting its motion for summary judgment in part, and declaring the plan entitled to the funds deposited in the registry of the court in the amount of $ 20,-209.94, plus all interest the amount has earned (less the court administrative fee),

12. In an effort to circumvent its incomplete remedy under ERISA, the Plan contends that it has a general right of recovery under federal common law. Admittedly, the judiciary has the power to develop common law pursuant to ERISA. *Jamail, Inc.,* 954 F.2d at 303 – 304. Yet, that license does not authorize the courts to rewrite the legislation to satisfy our aims. *Id.* Instead, "the legislative branch is granted the authority to make the policy decisions underlying ERISA, and in devising common law we must be careful to remain faithful to ERISA's policies." *Id.*

In *Great–West,* the Supreme Court recognized that due to the comprehensive and extensive study which preceded ERISA's enactment, the courts are "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Great–West, supra* (quoted source omitted). ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.' " *Id.*

In the face of the foregoing pronouncements, we conclude that we are not at liberty under the instant circumstances to fashion a federal remedy where Congress has purposefully crafted a procedure which, in this instance, does not afford complete recovery. *See, Great–West, supra.*

13. This includes the amount originally deposited plus interest earned less the assessment fee for the administration of funds. LR67.3

14. Within the next 10 calendar days from today, defense counsel is to submit to the court a proposed judgment approved as to form.

15. Applying the relevant factors set forth in *Todd v. AIG Life Ins. Co.,* we find that neither party has established the right to fees. *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448 (5thCir.1995). Moreover, the Plan is limited to the funds in the court registry. *See,* discussion, *supra.* In any event, neither side has submitted a contemporaneous time report as required by LR 54.2.

and dismissing all further claims of the plaintiff's petition;

IT IS FURTHER ORDERED, AD-JUDGED, and DECREED that there be judgment herein in favor of Mary Reynolds granting her motion for summary judgment in part and dismissing defendant's counter-claims against Mary Reynolds for any sums greater than the amount of funds in the registry of the court;

IT IS FURTHER ORDERED that there be judgment herein denying each party's request for attorneys' fees; and

IT IS FURTHER ORDERED that each side is to bear their own costs.